UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GARY LA BARBERA, LAWRENCE KUDLA,
DENNIS GARTLAND, THOMAS KING,
CHESTER BROMAN, FRANK FINKEL, and
JOSEPH FERRARA as Trustees and Fiduciaries
of the Local 282 Welfare, Pension, Annuity, Job
Training and Vacation and Sick Leave Funds,

**REPORT AND
RECOMMENDATION**
CV-98-7286 (JS)

Plaintiffs,

- against -

BULLDOG CONSTRUCTION, LTD.,

Defendant.

------------------------------------------------------------X

**ORENSTEIN, Magistrate Judge:**

Plaintiffs, trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Funds (collectively the "Funds"), commenced this action against Defendant Bulldog Construction, Ltd. ("Defendant") pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA") (codified as amended at 29 U.S.C. § 1132(g)(2), seeking principally payment of Defendant's delinquent contributions to the Funds for the months of April 1994 through June 1999. The district court presided over a three-day bench trial and in a Memorandum and Decision dated June 7, 2004, the court found Defendant liable for payments to the Funds pursuant to the Trust Agreement as requested in the third cause of action in the complaint. *Memorandum and Decision*, dated June 7, 2004, (Seybert, J.). The court, however, was unable to ascertain the exact amount of damages and directed Plaintiffs to submit a revised damages claim as per the formula in the Trust Agreement within

1

sixty days of the Order. (*Id.*).

Pursuant to the Order of District Judge Joanna Seybert dated November 8, 2004, Plaintiffs' revised claim for damages pursuant to the District Court's Memorandum and Decision, dated June 7, 2004, and Plaintiffs' request for leave to prepare an application for attorneys' fees and costs have been referred to the undersigned. On January 25, 2005 and February 11, 2005 this Court held a trial on the issue of damages.[1] *Order*, dated November 8, 2004 (Seybert, *J.*). At the conclusion of the damages trial, Defendant requested leave to submit a brief on the issue of interest owed to Plaintiffs for delinquent contributions pursuant to 29 U.S.C. § 1132(g)(2). (Tr., dated February 11, 2005, at 54). The Court granted Defendant's request and directed Defendant to file its brief on or before February 28, 2005. (*Id.* at 59). Alternatively, the Court advised Defendant upon its request for more time that the Court would grant Defendant an extension of this deadline to March 15, 2005, in exchange for Defendant's consent to the entry of a judgment in the amount of unpaid contributions sought by Plaintiffs, or $106,535.09. (*Id.* at 60). The Court's offer was based upon the clear and virtually uncontested evidence that Defendant owed such underlying amount of unpaid contributions and to avoid further delay in the four-year old case. In addition, the Court directed Defendant to include in its March 15, 2005 brief any opposition to Plaintiff's application for attorneys' fees and costs. Defendant neither filed a brief on or before February 28, 2005 nor filed a brief on or before March 15, 2005 pursuant to this Court's alternative option.

Based on Defendant's default on this Court's options, Plaintiff now moves by letter

---

[1] "Tr." refers to the transcripts of the damages trial dated January 25, 2005 and February 11, 2005.

2

application dated March 1, 2005, for this Court to report and recommend entry of a judgment against Defendant based on the unrefuted evidence proffered by Plaintiff at the damages trial and an award of attorneys' fees and costs based on their application dated December 3, 2004. *Ravitz Letter*, dated March 1, 2005. Plaintiffs also request leave to amend their application to include attorneys' fees and costs incurred from December 3, 2004 through the present. (*Id.*).

## DISCUSSION

Pursuant to 29 U.S.C. § 1145

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions of such plan or such agreement.

29 U.S.C. § 1145. The purpose behind the enactment of ERISA was to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law . . . ." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (quoting 126 Cong. Rec. 23,039 (1980)). Moreover, "ERISA is designed to ensure that pension funds not only are reimbursed for delinquent contributions but also that they will receive significant extra funding at the delinquent employer's expense." *New York State Teamsters Council Health and Hosp. Fund v. C & D Specialized Transport, Inc.*, 1995 WL 79176, at *2 (N.D.N.Y. Feb. 17, 1995) (internal quotation marks and citation omitted).

Accordingly, Section 502(g)(2) of the Act provides that in the event of a judgment in favor of a trustee who sought recovery of unpaid contributions for a plan, the court shall award the plan-

    A)    the unpaid contributions

3

B) interest on the unpaid contributions
C) an amount equal to the greater of –
i) interest on the unpaid contributions, or
ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Inasmuch as Plaintiffs commenced this action to enforce the provisions of each of the various employee benefit plans, section 1132(g)(2) controls and this Court applies each of the statute's remedial provisions in turn.

(a) **Unpaid Contributions**

At the damages trial, Plaintiffs proffered the testimony of Richard Bamberg, an auditor with Abrams, Hurd & Merckel, to explain the amount of damages the Plaintiffs would be entitled to under the formulas set forth in the trust agreement and collective bargaining agreement. Plaintiffs introduced and Bamberg testified to the revised spreadsheets and revised summary documents that quantified the damages incurred pursuant to the formula set forth in the trust agreement and collective bargaining agreement and reflected the adjustments for shop steward hours and amounts from the audit figures. (Tr., dated January 25, 2005 at 4-44; Tr., dated February 11, 2005, at 13-53). Plaintiffs also provided the Fund's Trust Agreement, Collective Bargaining Agreement and contemporaneously maintained billing records.

Based on this evidence, the Court finds that Plaintiffs proved the amount of their damages claim for unpaid contributions to each of the Funds. This Court accepts Plaintiffs' claim that defendants failed to make contributions for the relevant time period, namely April 1994 through June 1999, and determines that amount of those contributions for each respective Fund as

follows:

| | |
|---|---|
| Welfare Trust Fund | $ 39, 913.74 |
| Pension Trust Fund | $ 23, 138.40 |
| Annuity Trust Fund | $ 31, 035.49 |
| Job Training Trust Fund | $      579.71 |
| <u>Vacation/Sick Leave Trust Fund</u> | <u>$ 11, 867.75</u> |
| Total Unpaid Contributions | $106, 535.09 |

In sum, Plaintiffs are entitled to recover delinquent contributions in the total amount of $106, 535.09.

### (b)   Interest on the Unpaid Contributions

The Trust Agreement (and statute) provide for the collection of interest on the unpaid contributions. Specifically, Section 3 of the Trust Agreement provides:

> In addition to any other remedies to which the parties may be entitled an Employer in default for five working days shall be obligated to pay interest at the rate specified in Section 5-501 of the General Obligations Law of the State of New York, as the same may be amended from time to time, on the monies due to the Trustees from the first day of the month when the payment was due to the date when payment was made . . . .

Exh. 3, §3. New York General Obligations Law § 5-501 designates a six percent per annum interest rate "unless a different rate is prescribed in section fourteen-a of the banking law." N.Y. Gen. Oblig. Law § 5-501(1) (McKinney 2003). In turn, New York Banking Law § 14-a(1) states that "[t]he maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum." N.Y. Banking Law § 14-a(1) (McKinney 2003).

Subdivision 5 of section 14-a of the New York Banking Law provides:

> Whenever reference is made in this chapter or in any other law, contract or document to the rate of interest prescribed ... by the banking board or the superintendent pursuant to this section or any former section fourteen-a of this chapter, such reference shall be deemed a reference to the rate of interest prescribed in subdivision one of this section.

N.Y. Banking Law § 14-a(5) (McKinney 2003). Thus, this Court finds that under the terms of the Trust Agreement, the interest rate on the unpaid contributions computed separately upon each of the Trust Fund amounts will be at a rate of sixteen percent (16%) per year from the first date of the month when payment was due. *See Rachlin & Co. v. Tra-Mar, Inc.*, 308 N.Y.S.2d 153, 158, 33 A.D.2d 370 (N.Y. App. Div. 1970) (applying sixteen percent rate set by Section 14(a) of New York's Banking Law as the legal rate for Section 5-501 of the General Obligations law); *Bourgal v. Robco Contracting Enters., LTD*, No. 93-2664-ADS, slip op. At 8, n.4 (E.D.N.Y. Aug. 8, 1997); *see also New York State Teamsters Conference Pension & Retirement Fund v. Parlor City Contracting Co.*, 1997 WL 778677, at *4 (N.D.N.Y. Dec. 8, 1997) (holding plaintiff may recover interest on outstanding liability from the due date of the first payment that was not timely made); *Panise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 75 (N.D.N.Y. 1987).

Based on the evidence set forth at the damages trial, this Court determines that amount of interest due on the unpaid contributions at a rate of sixteen percent (16%) per year for each respective Fund through August 31, 2004 is as follows:

| | |
|---|---|
| Welfare Trust Fund | $ 47,702.46 |
| Pension Trust Fund | $ 27,653.62 |
| Annuity Trust Fund | $ 37,547.35 |
| Job Training Trust Fund | $ 693.21 |

| Vacation/Sick Leave Trust Fund | <u>$ 13,566.63</u> |
| Total Interest Through August 31, 2004 | $127,163.27 |

In sum, Plaintiffs are entitled to recover interest on the unpaid contributions through August 31, 2004 in the total amount of $127,163.27.

### (c) Double Interest or Liquidated Damages

In addition to the interest on the unpaid contributions provided for in Section 1132(g)(2)(B), Plaintiffs are also entitled pursuant to subparagraph (C) to the greater of interest on the unpaid contributions or liquidated damages not exceeding 20 percent of the unpaid contributions. *See Trustees of the Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 349 (S.D.N.Y. 1994); *Parlor City Contracting Co.*, 1997 WL 778677, at *4; *see also Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507-08 (2d Cir. 1995). Here, the greater amount is the liquidated damages and Plaintiffs have demonstrated entitlement to this award. Thus, Plaintiffs are entitled to recover liquidated damages in the total amount of $127,163.27.

### (d) Attorney's Fees and Costs

Section 1132(g)(2) (and the Trust Agreement) mandate the award of attorney's fees and costs in ERISA actions commenced by fiduciaries to enforce the terms of the trust agreement. "The determination of a reasonable fee award under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge." *Devito v. Hempstead China Shop, Inc.*, 831 F. Supp.

7

1037, 1043 (E.D.N.Y. 1993); *see In re Bolar Pharm. Co. Sec. Lit.*, 966 F.2d 731, 732 (2d Cir. 1992) (the district court's discretion is heightened because "the district court which is intimately familiar with the nuances of the case, is in a far better position to make . . . [award] decisions than is an appellate court, which must work from a cold record"); *cf. In re W. R. Huff Asset Management Co., LLC,* 409 F.3d 555, 562 (2d Cir. 2005) (observing that upon appellate review, a district court's decision in awarding attorneys' fees under the Equal Access to Justice Act and/or the Crime Victims' Rights Act was reviewable for an abuse of discretion because; "'(1) the language of the statute emphasized that the determination to award attorneys' fees was one for the district court to make; (2) the district court was better positioned than the court of appeals to decide the issue in question, as it may have had 'insights not conveyed by the record'; and (3) the problem was non-amenable to regulation by rule because of the 'diffuseness of circumstances, novelty, vagueness, or similar reasons'") (quoting *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)).

Courts in the Second Circuit apply the lodestar approach to calculating attorney's fees. *See id.*; *Bourgal v. Lakewood Haulage, Inc.*, 827 F. Supp. 126, 129 (E.D.N.Y. 1993). "According to this method, the number of compensable hours is multiplied by a reasonable hourly rate, and any necessary adjustments are then made to the resulting amount." *Meehan v. Gristede's Supermarkets, Inc.*, 1997 WL 1097751, at *5 (E.D.N.Y. Sept. 25, 1997).

It is well established that in calculating the lodestar rate, the district court must ascertain whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541 (1984); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d

Cir. 1997); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989). "If the Court finds that certain claimed hours are excessive, redundant, or otherwise unnecessary, the Court should exclude those hours from its lodestar calculation." *Duke v. County of Nassau*, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003). The party seeking an award of attorneys' fees must support that request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done'" *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2nd Cir. 1983)).

The Court has examined the Declaration of Amie Ravitz in support of Plaintiffs' application for attorneys fees and costs, the contemporaneous time records and contemporaneous costs and disbursements records attached thereto. *Ravitz Declaration*, dated December 3, 2004. The history of this case extends over four (4) years. *Ravitz Declaration*, dated December 3, 2004, at ¶3. Friedman & Wolf's attorneys expended 314 hours on this litigation, excluding the hours spent in preparing the instant application, and its law clerks expended 32 hours on the same. (*Id.* at ¶ 7). Friedman & Wolf billed those hours at its customary rates, which, at the time the fees were earned, ranged from $195 to $320 an hour for junior and senior associates to $325 to $420 an hour for the senior partner in charge of the case. (*Id.* at ¶¶ 5, 8). Friedman & Wolf billed those hours its law clerks expended at a rate of $85 per hour. (*Id.* at ¶ 5). This results in a lodestar amount of $74, 101.25. Notably, Defendant did not file any objections to Plaintiffs' application for attorney's fees.

Given the duration and nature of this case, the Court finds that the total number of hours Friedman & Wolf spent on this matter since 1998 is reasonable. Moreover, the rates at which Friedman & Wolf billed those hours are equitable, given the level of experience for each of the

attorneys listed in the practice of labor and employee benefits law and their seniority at the firm. *See Weil v. Island Savings Bank, FSB*, 188 F. Supp.2d 265, 268-69 (E.D.N.Y. 2002) (holding rates of the law firm Hogan & Hartson which ranged from $100 to $160 an hour for summer associates to $371 to $450 an hour for senior partner in charge of the case were not patently objectionable); *see also Duke*, 2003 WL 23315463, at *2-3 (observing prevailing rates in this district to be outdated and applying hourly rates slightly above the rates of between $100 to $200 an hour for junior and senior associates in light of the attorneys' level of experience in the field and seniority at the firm). Thus, the Court finds that Plaintiffs are entitled to an award of $74, 101.25 in attorney's fees.

Finally, Plaintiffs seek an award of costs and disbursements totaling $14, 741.79. Plaintiffs' expenses consist of court filing fees for service of process upon defendants, witness fees, transcript fees, Lexis and other expenditures such as ground transportation, hotel fees incurred during trial, postage, and express mail. The Court finds the documentation provided is adequate and the costs sought are reimbursable, with one exception, namely Plaintiffs' charge for hotel fees.

According to Plaintiffs' contemporaneous costs and disbursements records, Plaintiffs billed $1,585.37 in miscellaneous charges for "hotel during trial re: Bulldog (2/9/01)" on February 1, 2001 and $506.83 in miscellaneous charges for "hotel re: Bulldog (1/28-30/01)" on April 1, 2001. *Ravitz Decl.*, Exh. 12. Plaintiffs' attorney's firm is located in New York City and the trial in this case was held in Central Islip, New York. Given the nature of this action, namely an action seeking payment of delinquent contributions to a multiemployer benefit fund, and the location between Plaintiffs' attorney's firm and the Long Island Courthouse, this Court views

these costs as unreasonable. *See, e.g., King v. JSC Enterprises, Inc.*, 325 F. Supp. 2d 162, 174 (E.D.N.Y. 2003) (denying miscellaneous costs for hotel charges related to the trial where the trial was held in New York City and the attorneys worked in New York City); *Greenbaum v. Svenska Handelsbanken*, 998 F. Supp. 301, 305 (S.D.N.Y. 1998) (deducting hotel expenses from lodestar award for attorney whose office was located in Melville, Long Island and the trial was held in Manhattan, New York). Therefore, the Court deducts $2092.20 in hotel expenses from the lodestar award, and finds that Plaintiffs are entitled to an award of $12, 649.59 in costs and disbursements.

## CONCLUSION

Based on the foregoing, this Court respectfully reports and recommends that Plaintiffs be awarded damages in the amounts as follows:

    **$106, 535.09**   in unpaid contributions

    **$127, 163.27**   in interest on the unpaid contributions

    **$127, 163.27**   in liquidated damages

    **$ 74, 101.25**   in attorney's fees

    **$ 12, 649.59**   in costs and disbursements

for a total damages award of **$447,612.47.** In addition, this Court respectfully reports and recommends that the damages award be with interest and taxable costs and disbursements.

Finally, there being no opposition, this Court respectfully reports and recommends that Plaintiffs' request for leave to amend their application to include attorney's fees and costs incurred from December 3, 2004 through the present be granted. Plaintiff shall submit such

amendment or supplement by September 1, 2005.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within fifteen (15) days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. 636 (b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992).

**SO ORDERED.**

Dated: Central Islip, New York
July 28, 2005

MICHAEL L. ORENSTEIN
United States Magistrate Judge